IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:07-CV-184-FL

| | |
|---|---|
| SONNY EARL NORRIS, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND
RECOMMENDATION**

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Sonny Earl Norris ("Claimant") filed this action pursuant to 42 U.S.C. § 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for SSI payments on 7 May 2003, alleging disability beginning 1 June 1981. (R. 98-100). His claim was denied initially and upon reconsideration. (R. 28-29, 47-50, 52-53). A hearing before Administrative Law Judge ("ALJ") Wilson was held on 23 May 2005, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 374-70). On 11 August 2005, the ALJ

issued a decision denying Claimant's claim. (R. 30-43). On 23 February 2006, the Appeals Council remanded the claim to the ALJ for further administrative proceedings. (R. 68-71).

A second administrative hearing before the same ALJ was held on 5 March 2007, at which Claimant was represented by counsel and both a medical expert ("ME") and a VE appeared and testified. (R. 371-416). On 24 August 2007, the ALJ issued a decision denying Claimant's claim. (R. 10-27). On 12 October 2007, the Appeals Council denied Claimant's request for review of ALJ Wilson's second administrative decision. (R. 5-7). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (2007). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d

2

585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform his past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* § 416.920a(e)(2).

3

In this case, Claimant alleges the following errors by the ALJ: (1) finding that the severity of Claimant's mental deficiency does not meet or equal the requirements of Listing 12.05C; (2) improperly assessing Claimant's RFC; and (3) failing to pose a hypothetical that adequately reflected Claimant's mental impairment. Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 4, 12. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I.   ALJ's Findings

The ALJ's decision followed the above-described sequential evaluation process, concluding at step five that Claimant had the RFC to perform other work. (R. 25). As such, the ALJ found Claimant "not disabled" as defined in the Act.

At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following combination of severe impairments: (1) a stomach condition; (2) asthma; and (3) borderline intellectual functioning. *Id.* The ALJ also found Claimant had the following nonsevere impairments: (1) anxiety; (2) a back condition; (3) headaches; and (4) obesity. *Id.* at 15-16. However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 17. In reviewing Claimant's alleged anxiety and applying the technique prescribed by the regulations, the ALJ found as follows:

"[T]his condition has not resulted in more than: mild restriction in his activities of daily living; mild limitations in his social functioning; mild deficiencies of (sic) his concentration, persistence, or pace; or any episodes of deterioration or decompensation in work or work-like settings.

*Id.* at 15.

4

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a full range of work at all exertional levels. *Id.* at 18. The ALJ also identified the following non-exertional limitations: occasional stopping, no exposure to fumes, and a low stress non-production work environment requiring the performance of simple tasks. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible based upon the medical evidence and Claimant's own statements regarding his daily activities. *Id.* at 18-25. At step four, the ALJ concluded Claimant had no past relevant work. *Id.* at 25. Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, such as dishwasher, machine tender and laundry worker. *Id.* at 26.

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was twenty-seven years old and residing with his girlfriend and his father. (R. 396, 399). Claimant is financially dependent on his father and other family members and is a recipient of Medicaid and food stamps. (R. 400, 404). Claimant testified to no past relevant work. (R. 402).

Claimant stated he is unable to perform his past work due to stomach and back problems, headaches, asthma, short-term memory loss, dizziness and fatigue. (R. 396, 407). Claimant takes Reglan and Prilosec for his stomach ailments, a muscle relaxer for his back pain, Tylenol for his headaches and uses a bronchodilator twice a day for his asthma. (R. 396-98). Claimant testified to experiencing drowsiness throughout the day, which is most prevalent in the morning, as a result of his medications. (R. 405-06).

5

Claimant described his stomach pain, a daily occurrence, as a "burning feeling" which eases somewhat when he rests on his hospital bed in an inclined position. (R. 398, 405). Claimant explained further that he is unable to remain still as a result of his stomach pain and that the pain is exacerbated by bending. (R. 398, 405). With respect to his back, Claimant stated he has not undergone any treatment, including physical therapy, injections or traction. (R. 397). Claimant explained his headaches, which occur one to times a week, last for up to three hours. (R. 398). Claimant testified to experiencing headaches for approximately three years; however, he has not undergone any diagnostic examinations. (R. 399). Claimant has never been hospitalized for asthma. (R. 399).

As for daily activities, Claimant stated he watches television, listens to the radio and lies down for up to four hours each day. (R. 401, 405). On occasion, Claimant will pick up his father from work or drive to the store; however, he does not drive long distances. (R. 400-01). Claimant does not socialize with friends, he does not exercise and he has been advised by a physician not to lift or pull anything. (R. 401-02, 406). Claimant stated further that his girlfriend performs all household chores. (R. 406).

## III.    Medical Expert's Testimony at the Administrative Hearing

Shobha Farias, M.D., an internist and Claimant's treating physician, testified as a medical expert at the administrative hearing. (R. 375-93). The ALJ asked the ME to explain her diagnoses, and reasons therefor, appearing on a medical examination report dated 7 June 2005. (R. 338-39, 380-384). The ME testified to diagnosing Claimant with headaches, severe reflux disease, bronchitis, severe dyspepsia secondary to severe GERD, shortness of breath, recurrent regurgitation of food, anxiety and neurosis over the course of her treatment of Claimant between

6

April 2005 and January 2007. (R. 376-77, 382-383). The ME described Claimant's bronchitis as non-severe and explained Claimant uses a bronchodilator on an "as-needed" basis as Claimant is symptom-free most of the time. (R. 381). The ME stated further that medication relieves Claimant's dyspepsia to a great degree. (R. 382). The ME based her anxiety diagnosis, for which she prescribed no medication, on Claimant's anxiousness and his unwillingness to communicate. (R. 383). The ME testified further that Claimant's anxiety rendered him unsuitable for employment at that time and advised Claimant to consider speaking with a psychiatrist. (R. 382-83). As a result of Claimant's anxiety and reflux disease, the ME explained that at the time she completed the June 2005 report, she believed Claimant was permanently unable to return to previous work. (R. 383, 391). However, the ME explained further that she believed Claimant was capable of working, as long as repetitious bending was not required and Claimant received treatment for his anxiety. (R. 384, 391). Finally, the ME acknowledged that her findings in the June 2005 report were based on Claimant's subjective complaints, usually relayed to the ME via Claimant's mother and sister, given Claimant's neurological and musculoskeletal examinations were unremarkable and no x-rays or diagnostic examinations were performed.[1] (R. 376, 378-79).

Next, the ALJ discussed the ME's physical RFC questionnaire report dated 30 January 2006. (R. 340-46, 384-88). After confirming the ME's diagnoses and findings remain applicable (R. 384), the ALJ inquired about medications. (R. 384). The ME explained Claimant is prescribed Reglan for reflux disease and that Claimant complains of drowsiness when he takes this medication. (R. 384-85, 30). The ME stated further that drowsiness is a side-effect of

---

[1] The ME stated that Claimant failed to appear for a scheduled MRI in July 2006. (R. 378).

Case 7:07-cv-00184-FL Document 19 Filed 07/24/08 Page 7 of 22

Reglan. (R. 390). As for Claimant's anxiety, the ME explained no medications were prescribed as she believed Claimant should be evaluated by a psychologist. (R. 386). The ME stated further that Claimant's anxiousness had diminished somewhat since the RFC assessment and attributed this change to Claimant becoming adjusted to her office. (R. 386-87). With respect to her responses as to Claimant's physical abilities, the ME acknowledged that no objective findings support her opinion as to Claimant's limitations with respect to sitting, standing and walking. (R. 386-88). Rather, her opinion was based solely on Claimant's complaints of fatigue and tiredness following moderate exercise and limited walking. (R. 386-87, 389). Also, her opinion that Claimant should not stoop was based on Claimant's complaints of regurgitation when he lies down or bends over. (R. 388, 390). Based on this complaint, the ME testified to prescribing a hospital bed and directing Claimant to sleep at a thirty to forty-five degree angle. (R. 391).

## IV. Vocational Expert's Testimony at the Administrative Hearing

Robert Brabham testified as a VE at the administrative hearing. (R. 408-14). After stating Claimant has no past relevant work experience (R. 409), the ALJ posed the following hypothetical:

> Please assume that you're dealing with a hypothetical individual the same age as the [C]laimant, with the same educational background and past work experience. Further assume that this hypothetical individual has no limitations exertionally. This individual would be restricted in stooping to occasional [sic]; avoid concentrated exposure to fumes. This individual could do simple, one- to two-step tasks in a low-stress work environment; thus, a nonproduction work environment....Would such a hypothetical individual be able to do any work which exists in the national economy?

(R. 409-10). The VE responded the individual could perform the following jobs at the unskilled level, which are consistent with the DOT: (1) dishwasher - medium exertion, DOT 318.687-010,

8

SVP 2 (4,000 positions locally and 155,000 nationally); and (2) machine tender - light exertion, DOT 920.685-086, SVP 2 (20,000 positions locally and 800,000 positions nationally); and (3) laundry worker - medium exertion, DOT 369.687-026, SVP 2 (7,000 positions locally and 280,000 nationally). (R. 410-11). The ALJ then asked the VE to consider the same hypothetical but with the additional limitation of a need to lie down on a daily basis at the discretion of the hypothetical individual. (R. 411). The VE responded that no jobs exist allowing for this restriction. *Id.*

Next, Claimant's counsel questioned the VE and asked whether a hypothetical individual capable of sitting, standing and walking about two hours total in an eight-hour day was employable. (R. 412). The VE responded in the negative. *Id.* When asked whether a hypothetical individual capable of maintaining concentration for a total of two hours out of an eight-hour day was employable, the VE responded in the negative. (R. 412-13). Claimant's counsel then asked "[i]f you have a hypothetical individual who is able to sustain his attention on simple, repetitive tasks, although he does these tasks quite slowly, how would that affect your answer?" (R. 413). After describing the hypothetical as vaguely-worded, the VE responded that "[s]omeone who is drastically or...grossly slower than what would normally be expected, that's certainly not going to be consistent with gainful employment." *Id.* Claimant's counsel then asked the VE to consider a hypothetical individual who is capable of comprehending, retaining and following simple verbal instructions with supervision. (R. 414). The VE opined that if the individual can only "maintain concentration with constant supervision, then...that's not consistent with gainful employment." *Id.* Finally, Claimant's counsel asked the VE to consider an individual "who is fairly sufficient ...able to follow simple, verbal instruction with...supervision."

9

Again, the VE testified that "constant supervision...[is] not consistent with competitive, gainful employment." *Id.*

## DISCUSSION

**I.    The ALJ properly determined Claimant is not disabled *per se* under Listing 12.05C.**

Claimant argues that the ALJ erred by failing to find that his impairment meets or equals Listing 12.05, the listing for mental retardation. *See* Pl.'s Mem. at 4-10. This Court disagrees.

Claimants bears the burden of demonstrating that his impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). To meet the requirements of Listing 12.05, a claimant's impairment must first satisfy the introductory diagnostic description of mental retardation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. Specifically, the claimant must demonstrate (1) subaverage general intellectual functioning (2) deficits in adaptive functioning; and (3) onset before the age of twenty-two. *Id.* at § 12.05. Upon satisfaction of the diagnostic description, the claimant must meet the required severity level of this disorder, which is accomplished by satisfying any one of four categories labeled (A)-(D). *Id.* In this case, Claimant contends he satisfies the mental retardation listing under category C ("Listing 12.05C"), which requires (1) a valid verbal, performance or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, that imposes an additional and significant work-related limitation of function.[2] *Id.* at § 12.05C.

---

[2] The "work-related limitation of function" requirement is satisfied when the claimant is determined to have a severe impairment at step two of the evaluation process. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *see also Luckey v. Dept. of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989) (explaining the second prong of Listing 12.05C is established by a finding that a claimant suffers from a "severe combination of impairments" or a finding that claimant cannot perform his past relevant work).

10

The crux of Claimant's argument is that the ALJ erred when he found that Claimant did not have deficits in adaptive functioning consistent with mental retardation. (R. 18). Specifically, Claimant contends his deficits in adaptive functioning began in his formative years and supports his contention with the following evidence: (1) he did not advance beyond seventh grade (R. 17, 274); (2) his grades were consistent with mental retardation (R. 273-74); (3) he was placed in a specific learning disability (SLD) program for reading and language arts (R. 17, 255-61); (3) he had numerous academic and behavioral weaknesses (R. 267); (4) his achievement scores in reading and writing were far below his IQ score of 72 as reported in 1991 (R. 18, 262); (5) his IQ score was reported at 63[3] in October 1990 (R. 17, 276); and (6) he was described as functioning in the bottom of the borderline range of intelligence in a school psychological evaluation by Ronald Greene, M.S., dated 6 May 1994 (R. 254). *See* Pl.'s Mem. at 9-11.

Claimant contends further that the ALJ failed to discuss the October 1990 IQ score and Mr. Greene's findings. *Id.* at 10. To the contrary, the ALJ expressly recognized that some assessments revealed Claimant had an IQ score below 70. (R. 17). While Dr. Greene's findings are not specifically referenced, the ALJ's written opinion documents the majority of Claimant's psychological evaluations thereby "enabl[ing]...[this Court] to conclude that [the ALJ] considered [his] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th

---

[3] Claimant ends the discussion of his first assignment of error with a citation to *Grant v. Astrue*, 255 Fed. Appx. 374, 375 (11th Cir. 2007) (unpublished opinion). *See* Pl.'s Mem. at 12. In *Grant*, the court cites *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) for the proposition that an IQ score between 60-70 creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22. *See Grant*, 255 Fed. Appx. at 375. To the extent Claimant relies on *Grant* in contending his IQ scores alone are sufficient to establish Claimant's alleged deficits in adaptive functioning during his formative years, Claimant's argument is not persuasive. *See Justice v. Barnhart*, 431 F. Supp. 2d 617, 620 (W.D. Va. 2006) (explaining "[t]he Fourth Circuit has not held that low IQ alone proves manifestation of deficits in adaptive functioning before age 22") (citing *Luckey*, 890 F.2d at 668).

11

Cir. 2005). Moreover, Dr. Greene's conclusion that Claimant functions at the borderline range of intelligence is in accord with the ALJ's finding that Claimant suffers from borderline intellectual functioning. (R. 18, 254). The ALJ is not required to discuss all evidence in the record. *See Dyer*, 395 F.3d at 1211 (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *accord Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

Despite Claimant's contention to the contrary, substantial evidence supports the ALJ's finding that Claimant did not have significant deficits in adaptive functioning. First, with respect to Claimant's IQ, the ALJ noted school psychological evaluations revealed IQ scores exceeding 70. (R. 17, 252-53, 262). Claimant, however, emphasizes the testing by Mary Hardin, M.A.[4] and William Link, Ph.D., state agency consultants, and Judson Dukes, Jr., D.Ed., which revealed IQ scores below 70 - placing him in the mildly mentally retarded range of intellectual functioning. (R. 17, 179-80, 296-99, 301-03). While acknowledging these test scores, the ALJ noted that Ms. Hardin and Dr. Link, the examiners associated with the evaluations in 2003 and 2005 respectively, made the following observations regarding Claimant's effort during testing: (1) "invested limited effort into his performance" (R. 17, 180); (2) "some malingering is suspected" *Id.*; and (3) "limited investment [in] the task" (R. 17, 299).[5] Also, Ms. Hardin, Dr. Link and Dr.

[4] The ALJ incorrectly attributes the observations expressed by Ms. Hardin to Dr. Link. (R. 22, 179).

[5] During Claimant's January 2006 psychological evaluation, Judson Dukes, Jr., D.Ed. observed that Claimant put forth sufficient effort during testing (R. 301).

Dukes found Claimant capable of understanding verbal instructions and relating constructively to supervisors and coworkers. (R. 17 n.3, 23, 25, 180, 299, 302). Furthermore, Ms. Hardin and Dr. Link found Claimant capable of completing simple, repetitive tasks. (R. 17 n.3, 25, 180, 299). Finally, Dr. Dukes found Claimant capable of tolerating work-related pressures. (R. 23, 302-03).

In addition to Claimant's performance during psychological evaluations, the ALJ also considered Claimant's ability to interact with other people and live independently. For instance, the ALJ noted Claimant's ability (1) to read at the sixth grade level as a seventh-grader; (2) to take the written test for his driver's license; (3) to understand and complete the required paperwork for his disability claim; (4) to comprehend and answer questions at the administrative hearing; (5) to count change and handle a savings account; and (6) to maintain relationships with his family and girlfriend. (R. 15, 17-18, 23, 25, 240). The ALJ noted further Claimant's daily activities which include driving, shopping and attending church frequently. (R. 18, 23, 25). Also, in reviewing Claimant's school records, the ALJ commented on Claimant's numerous absences during each school year, surmising "a possible lack of motivation [may have been] a factor in...[C]laimant's lack of academic success." (R. 17, 273-74).

Finally, the ALJ's finding that Claimant suffers from borderline intellectual functioning is supported by the following: (1) 19 January 2006 report by Renee Halloway, M.D., a non-examining state agency consultant, who assessed Claimant with borderline intellectual functioning and found Claimant capable of performing simple, routine and repetitive tasks (R. 23, 318, 321); (2) 20 June 2006 report by Mitchell Rapp, Ph.D., a non-examining state agency consultant, who found mild mental retardation is not supported by school records and affirmed

13

Dr. Halloway's findings (R. 23, 304); and (3) Dr. Link's notation that Claimant's 1994 psychological evaluation supported a diagnosis of borderline intellectual functioning and his suspicion that Claimant functioned in the mid-to-low borderline range in most areas of his life (R. 17 n.3, 298).

Because Claimant failed to show that he met the initial diagnostic criteria for Listing 12.05, the ALJ was not required to consider whether Claimant met the criteria for severity under subsection (C). *See Justice,* 431 F.Supp. 2d at 619 (explaining "a finding of mental retardation cannot be warranted without a finding that the [claimant] manifested deficits in adaptive functioning before age 22") (citation omitted). The ALJ appropriately considered Listing 12.05 and substantial evidence supports his determination that Claimant's impairments do not meet or equal this Listing. Claimant's argument effectively amounts to a request that this Court reweigh the evidence and "substitute its judgment" for that of the ALJ, which this Court may not do. *Mastro,* 270 F.3d at 176. Rather, this Court is confined to determining whether substantial evidence supports the ALJ's determination, *see Coffman,* 829 F.2d at 517, and in this case, the ALJ cited specific reasons for finding no significant deficits in Claimant's adaptive functioning prior to the age of 22. (R. 17-18).

## II. The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ failed to accurately describe Claimant's RFC.[6] Pl.'s Mem. at 12. Specifically, Claimant asserts his RFC should include greater limitations with respect to his

---

[6] In his memorandum, Claimant identifies only two assignments of error; however, Claimant begins his discussion regarding the second assignment of error with the statement that his RFC is defective. *See* Pl.'s Mem. at 12. For this reason, the Court views Claimant's memorandum as positing three assignments of error.

ability to socialize and to understand, remember and carry out detailed instructions. *Id.* at 15-16. This Court disagrees.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.[7]

The ALJ considered Claimant's subjective complaints and Claimant's medical history. First, the ALJ's opinion demonstrates a detailed review of Claimant's medical history, providing a separate discussion of each impairment. *See Baldwin v. Barnhart,* 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) ("Sufficient consideration of the combined effects of a [claimant's] impairments is shown when each is separately discussed in the ALJ's decision....") (citations omitted). The ALJ's assessment also includes statements by Claimant found to be credible. *See Hines,* 453 F.3d at 565 (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence).

---

[7] Claimant incorrectly contends that "[t]he burden of proof as to [a claimant's] RFC at step five of the sequential evaluation is on the [ALJ]." *See* Pl.'s Mem. at 13. However, the burden of proof and production during the first four steps of the inquiry, which includes the RFC determination, rests on the claimant. *Pass,* 65 F.3d at 1203

15

In compliance with SSR 96-8p, the ALJ explained his reasoning for the weight accorded various medical opinions. For example, the ALJ afforded minimal weight to the opinion of Dr. Farias regarding Claimant's limitations, given Dr. Farias' admission that objective medical testing was generally unremarkable and that her medical opinions were based solely on Claimant's subjective complaints. (R. 22). As for the psychological findings by Ms. Hardin, the ALJ acknowledged medical evidence supports the finding that Claimant's mental impairment adversely affects his understanding, concentration and persistence. *Id.* However, the ALJ accorded little weight to Ms. Hardin's opinion that Claimant suffered more than a mild impairment in terms of socialization, citing Claimant's ability to retain relationships, drive, shop and attend church on a frequent basis. *Id.* This determination by the ALJ is also supported by (1) Dr. Link's finding that Claimant's "social interactions were polite, appropriate and respectful" and his belief that Claimant would not have "difficulties in...relat[ing] constructively to supervisors and coworkers" (R. 23, 299); and (2) Dr. Dukes' finding that Claimant possessed interpersonal skills "adequate for basic social interaction" (R. 301). Regarding the state agency consultants' opinions that Claimant was incapable of work exceeding medium exertion (R. 305, 307-14), the ALJ explained that Claimant did not require or seek any significant medical care as a result of his physical condition and routine physical examination of Claimant was unremarkable. (R. 22-23, 291-95). Accordingly, the ALJ afforded those opinions limited weight. (R. 23). Finally, with respect to the opinions of state agency medical consultants regarding Claimant's mental RFC (R. 304, 316-18) and functional limitations (R. 198, 330), the ALJ accorded the findings that Claimant suffered from moderate limitations in his activities of daily living (R. 198) and social functioning (R. 198, 330) with marked limitations in his ability

16

to understand, remember and carry out detailed instructions limited weight. (R. 23, 316). The ALJ supported his decision by noting Claimant's ability (1) to understand, remember and carry out instructions upon consultive examination; (2) to understand and answer questions upon medical examination and during both administrative hearings; and (3) to complete the required Social Security Administration ("SSA") paperwork. (R. 23). The ALJ noted further Claimant's ability to exercise, drive, shop, watch television and listen to the radio. *Id.* Finally, the ALJ explained Claimant has not required any mental health treatment or medication. (R. 22-23)

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## III. The hypothetical posed to the VE adequately characterized Claimant's mental impairment.

Claimant contends the hypothetical posed to the VE did not adequately reflect Claimant's mental impairment in that it did not include his IQ, the findings by Ms. Hardin as to Claimant's ability to concentrate and socialize, the degree of limitations for all four categories appearing on the mental RFC assessment form, the functional limitations appearing in the Psychiatric Review Technique ("PRT") form and the mental abilities required of unskilled work as defined by the SSA's Program Operations Manual System ("POMS"). *See* Pl.'s Mem. at 13, 15-19. For the following reasons, this Court finds Claimant's argument to be unpersuasive.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth

17

all of a claimant's physical and mental impairments. *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992); *Mixon v. Astrue*, 2008 WL 111157, at *9 (E.D.N.C. Jan. 8, 2008). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record."); *Mixon*, 2008 WL 11157, at *9; *Bryant v. Astrue*, 2008 WL 2037421, at *11 (E.D.N.C. May 12, 2008). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Bryant*, 2008 WL 2037421, at *11 (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir.2005)); *see also Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ").

In this case, the hypothetical posed to the VE incorporated Claimant's RFC as determined by the ALJ and the ALJ precisely set out Claimant's individual physical and mental impairments. (R. 472); *see Walker*, 889 F.2d at 50. While the ALJ did not provide the VE with Claimant's IQ, he appropriately exercised "some discretion to craft [his] hypothetical question to communicate to the vocational expert what [C]laimant [could] and [could not] do." *Fisher v. Barnhart*, 181 Fed. Appx. 359, 364 (4th Cir. 2006) (unpublished opinion). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Id.* In

18

particular, the ALJ asked the VE to consider an individual capable of performing "simple, one-to two-step tasks in a low-stress (nonproduction) work environment" - limitations reflecting Claimant's borderline intellectual functioning. *See id.* (citing *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) (finding a hypothetical question describing a claimant "as capable of doing simple work adequately accounts for the finding of borderline intellectual functioning")). With respect to Ms. Hardin's findings, as explained above, the ALJ acknowledged medical evidence supports the finding that Claimant's suffers from deficiencies in understanding, concentration and persistence - deficiencies "adequately captured" by the description that Claimant can perform simple tasks. *See Howard*, 255 F.3d at 582 ("the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [a claimant's] deficiencies in concentration, persistence or pace"). As for Ms. Hardin's finding that Claimant suffered more than a mild impairment in terms of socialization, the ALJ sufficiently set forth his reasoning for finding otherwise.

Next, the material that Claimant identifies as having been ignored is contained in Section I-Summary Conclusions of the mental RFC form (R. 211-12, 316-17) and Section III ("B" criteria) of the PRT form (R. 198, 330). Per the POMS, a consultant's mental RFC opinion is not set forth in Section I of the mental RFC form - which contains a series of checkboxes intended as a worksheet - but rather in Section III, titled "Functional Capacity Assessment." *See* POMS § DI 24510.060(B)(2)(a) & (4)(a), available at https://s044a90.ssa.gov/apps10/ ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment.... Section III - Functional Capacity Assessment, is for recording the mental RFC determination. It is in this section that the

19

actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.") (boldface omitted). As such, the ALJ was not required to list factors appearing in section I in the hypothetical posed to the VE. *See Malueg v. Astrue*, 2007 U.S. Dist. LEXIS 39790, at \*18 (W.D. Wis. May 30, 2007) (holding the ALJ did not err by not using the Section I worksheet portion of the mental RFC form in determining a claimant's RFC); *Bates v. Astrue*, 2008 WL 1736819, at \*11 (D. Del. Apr. 11, 2008) (explaining there is no requirement that the ALJ include every limitation identified within the summary conclusions). Moreover, in comparing the ALJ's mental RFC assessment with those of the non-examining state agency consultants, it is apparent that the ALJ gave their findings some weight in that like both consultants, the ALJ concluded mild mental retardation is not supported by the evidence, (R. 304) (affirming mental RFC and PRT findings of 19 January 2006) and agreed that Claimant is capable of learning, remembering, understanding and performing simple, routine and repetitive tasks. (R. 304, 318). However, as explained above, the ALJ provided sufficient reasoning for according limited weight to the opinion that Claimant would have marked difficulty with detailed tasks. (R. 23, 318).

As for Claimant's contention that the ALJ was also required to list the "B" criteria of the PRT form, the POMS specifically instructs the adjudicator that "the limitations identified in the... ["B"] criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *See* POMS § DI 24510.006(C)(4). In other words, the "B" criteria at issue here is to be used by the ALJ to determine whether Claimant has a severe impairment, and if so, whether that impairment meets

one of those listed in Appendix 1 of the regulations - not whether he retains the functional capacity to perform his past relevant work, or any other work. *See Hensley v. Astrue*, 2008 WL 1026237, at *7 (E.D. Ky. Apr. 9, 2008) (explaining "the 'B' criteria are not intended to be a residual functional capacity assessment; rather, they are used in conjunction with the remainder of the PRTF to determine whether a Listing is met") (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)); *see also Yoho v. Comm'r of Soc. Sec.*, 1998 WL 911719 , at *3 (4th Cir. Dec. 31, 1998) (stating the ALJ is not obligated to transfer the findings on the PRTF verbatim to the hypothetical questions).

Finally, Claimant contends the ALJ was required to list all mental abilities for any job as provided in the POMS. *See* Pl.'s Mem. at 18. This contention warrants little discussion as the hypothetical adequately addressed Claimant's mental limitations by restricting him to simple one-two step tasks in a low-stress work environment. (R. 18, 409-10). Moreover, as acknowledged by Claimant, mental activities of unskilled work require the ability to understand, remember and carry out simple instructions and to respond appropriately to supervision and coworkers - findings made by the examining consultants and the ALJ. (R. 18, 23, 180-81, 299, 301); *see* SSR 96-9p, 1996 WL 374185, at *9 (Jul. 2, 1996) (identifying mental activities required of unskilled work). In addition, the VE testified that he read Claimant's file. (R. 409). The VE's testimony, therefore, "was sufficiently informed to be 'useful' . . . ." *See, e.g., Childers-Reese v. Chater*, 1995 WL 371628, at * 1 (4th Cir. June 21, 1995).

While Claimant contends that the ALJ should have included additional limitations in the hypothetical, the ALJ's determination that Claimant was restricted by only those limitations that

are reflected in the hypothetical is supported by substantial evidence. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be upheld. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 24th day of July, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge

22