IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:07-CV-184-FL

| | |
|---|---|
| SONNY E. NORRIS, | ) |
|     Plaintiff/Claimant, | ) ) ) |
| v. | ) ) ) ) ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) ) ) ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (DE ## 15 & 17) and plaintiff's timely objection to the memorandum and recommendation ("M&R") entered by the magistrate judge. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court upholds defendant's decision denying benefits.

## STATEMENT OF THE CASE

Plaintiff applied for Supplemental Security Income payments on May 7, 2003, alleging that, because of various conditions, he had been disabled since June 1, 1981. Plaintiff's application was initially denied and denied again upon reconsideration. Administrative Law Judge ("ALJ") Gregory M. Wilson held a hearing, at which the plaintiff was represented by counsel, and thereafter issued decision that plaintiff was not disabled. The Appeals Council subsequently vacated the ALJ's decision and remanded the claim for further proceedings. The ALJ held another hearing pursuant to the Appeals Council's order, at which plaintiff was represented by counsel. Additional medical

evidence was received regarding the plaintiff's conditions. Additional testimony also was received from an independent, impartial vocational expert ("VE"). In an opinion dated August 24, 2007, the ALJ once again found that plaintiff was "not disabled" and therefore not entitled to benefits. This decision was defendant's final decision upon the Appeals Council's denial of plaintiff's request for review.

Plaintiff timely filed this action seeking judicial review of the defendant's decision on November 15, 2007. On April 16, 2008, plaintiff filed motion for judgment on the pleadings. Defendant filed its motion on June 16, 2008, and these motions were referred to the magistrate judge. Plaintiff timely objected to the M&R and defendant timely replied.

## DISCUSSION

### A. Standard of Review

This court's role in reviewing the final decision of the defendant is limited to determining whether substantial evidence supports the defendant's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It must be "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. In addressing a plaintiff's objection to an M&R, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see Camby v. Davis, 718 F.2d 198, 200 (4th

2

Cir. 1983).

## B. Analysis

In this case, plaintiff makes three objections to the magistrate judge's M&R. First, plaintiff contends that the magistrate judge erred in concluding that because plaintiff failed to demonstrate that he satisfied the initial diagnostic criteria of 20 C.F.R. 404, Subpt. P, App. 1 § 12.05, the ALJ did not have to consider whether plaintiff satisfied the criteria for § 12.05C. Second, plaintiff claims the magistrate judge incorrectly determined who bore the burden of proof for determining plaintiff's residual functional capacity ("RFC"). Finally, plaintiff argues that the magistrate judge erred in finding that the ALJ's hypothetical question posed to the VE at plaintiff's hearing was adequate to address the plaintiff's mental limitations.

Plaintiff's first objection involves the magistrate judge's assessment of the ALJ's finding that plaintiff does not satisfy the requirements for § 12.05's definition of mental retardation. According to plaintiff, a claimant is *per se* mentally retarded if the claimant has a valid I.Q. score between 60 and 70. The plain language of §§ 12.00 and 12.05 does not support plaintiff's contention.

Section 12.00 states in relevant part:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). <u>If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria</u>, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the

3

additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A) (emphasis added). Thus, by the plain language of § 12.00, § 12.05 sets forth a two-part inquiry for determining mental retardation. The first step requires examination of whether a claimant has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05. Only if a claimant has "significantly subaverage general intellectual functioning with deficits in adaptive functioning" which manifested before age 22 does the inquiry move on to whether subparts A, B, C, or D are satisfied.

This court's independent research finds that the Fourth Circuit has not held that low I.Q. alone can satisfy the diagnostic description of § 12.05. The Fourth Circuit has instead held that, absent "evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant." Luckey v. U.S. Dept. of Health & Human Servs., 890 F.2d 666, 668-69 (4th Cir. 1989) (citing Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985)). Plaintiff, however, asserts that a finding that a claimant has a valid IQ score between 60 to 70 establishes that the claimant satisfies the threshold "significantly subaverage general intellectual functioning with deficits in adaptive functioning." Plaintiff relies on two Eleventh Circuit cases for his contention that a valid IQ score between 60 and 70 creates a rebuttable presumption that a

4

claimant manifests deficits in adaptive functioning before the age of 22.¹ This court declines to adopt such a presumption in this case and respectfully disagrees with those decisions cited by plaintiff. A rebuttable presumption that an IQ score between 60 and 70 alone establishes mental retardation under § 12.05 ignores the language of that regulation and collapses the two-part inquiry into a single step. It also cuts against the language of the diagnostic description of § 12.05, which requires both low IQ and adaptive functioning deficits.² Further, creating a presumption of

---

¹Plaintiff cites Grant v. Astrue, 255 Fed. Appx. 374 (11th Cir. Ala. 2007) which, in turn, cites to Hodges v. Barnhart, 276 F.3d 1265, 1266, 1268-69 (11th Cir. 2001) as establishing this rebuttable presumption in the Eleventh Circuit.

²According to the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition) (DSM-IV):

> The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C).

AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 41 (4th ed. 1994) [hereinafter DSM-IV]. Crucially, the DSM-IV goes on to explain that a diagnosis of mental retardation does not necessarily follow simply because of a low IQ score.

> General intellectual functioning is defined by the intelligence quotient (IQ or IQ-equivalent) obtained by assessment with one or more of the standardized, individually administered intelligence tests (e.g., Wechsler Intelligence Scales for Children, 3rd Edition; Stanford-Binet, 4th Edition; Kaufman Assessment Battery for Children). Significantly subaverage intellectual functioning is defined as an IQ of about 70 or below (approximately 2 standard deviations below the mean). . . . Thus, it is possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior. Conversely, Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning.

Id. at 41-42. Indeed, as the DSM-IV makes clear, impairments in adaptive functioning may be more important in making a finding of mental retardation:

> Impairments in adaptive functioning, rather than a low IQ, are usually the presenting symptoms in individuals with Mental Retardation. Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting. Adaptive functioning may be influenced by various factors, including education, motivation, personality characteristics, social and vocational opportunities, and the mental disorders and general medical conditions that may coexist with Mental Retardation.

(continued...)

retardation based on IQ scores alone ignores § 12.00's admonition that standardized test scores are "only part of the overall assessment" of mental retardation and must be considered with the narrative report accompanying the test. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00D.6.

Section 12.00 clearly establishes that the diagnostic description of § 12.05 must first be met before considering the criteria in subparts A through D. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A. That diagnostic description requires findings on both intelligence and adaptive functioning. Id.; see Justice v. Barnhart, 431 F. Supp. 2d 617, 620 n.2 ("The 'manifestation of deficits in adaptive functioning' is a separate and distinct element that must be proven."). IQ scores are indeed relevant to determining whether a claimant meets the diagnostic description, but they do not satisfy it alone. Because this finding is made during the first four steps of the sequential evaluation, plaintiff bears the burden of establishing the requirements of the diagnostic description with valid test scores and other evidence that establishes adaptive functioning deficits. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992)). The ALJ in this case properly considered the plaintiff's I.Q. scores, which fell both inside and outside of the § 12.05(C) range,[3] the narrative reports which accompanied those tests, as well as other relevant information in his assessment of the plaintiff's intellectual functioning.[4] (See R.

---

[2](...continued)
Id. at 42.

[3] The ALJ specifically noted two IQ tests on which plaintiff scored 76 (full scale) and 72 (full scale). The first of these was conducted when plaintiff was seven years old. The second was conducted when plaintiff was 10 years old. The ALJ also noted the results of two more recent IQ. One, conducted in October 2003, produced a full scale score of 64, while the other, conducted in November 2005, produced a full scale score of 63. However, in each of these more recent tests, the examiners suspected that the test scores did not accurately reflect plaintiff's abilities due to limited effort and suspected malingering. (R. at 180, 299.)

[4] In addition to plaintiff's IQ scores, the ALJ considered plaintiff's school history (including extensive absences, which he reasonably found may bear on plaintiff's lack of scholastic achievement), childhood literacy level (plaintiff
(continued...)

6

at 17-18.) Based on this review of the relevant evidence, the ALJ determined that plaintiff's "intelligence, while low, does not fall into the realm of mental retardation, as the evidence on the whole fails to indicate any deficits in adaptive functioning as required for such a diagnosis." (R. at 18.) Instead, the ALJ concluded plaintiff suffers from borderline intellectual functioning. (Id.) This finding is amply supported by the record.[5] The magistrate judge, after reviewing the ALJ's findings regarding the plaintiff's intellectual functioning, properly concluded that because the ALJ found that plaintiff did not satisfy the diagnostic description in § 12.05, he did not need to consider whether plaintiff satisfied any of the criteria listed in the second step of § 12.05. Based on the above-stated reasons, this court finds that both the ALJ and the magistrate judge correctly interpreted § 12.05 and therefore plaintiff's objection is overruled.

As to plaintiff's second assignment of error, plaintiff incorrectly contends that the magistrate judge misstated the allocation of the burden of proof during the sequential evaluation of disability. This contention stems from plaintiff's assertion that defendant has the burden of proof as to a claimant's RFC at step five of the sequential evaluation. (Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 13.)

Plaintiff is correct in contending that defendant has the burden of proof at step five of the sequential evaluation process. See Pass, 65 F.3d at 1203; Futrell v. Shalala, 852 F. Supp. 437, 440

---

[4](...continued)
could read at a 6th grade level in the 7th grade), and ability to take the written test for his drivers license. The ALJ further noted that plaintiff was capable of understanding and completing the required paperwork for his disability claim, participating in medical testing. Further, the ALJ took note of plaintiff's ability to engage in normal daily activities. All of this evidence is relevant to the ALJ's determination that plaintiff did not satisfy the threshold inquiry under § 12.05 because it bears on whether plaintiff exhibits "deficits in adaptive functioning."

[5]For example, at least three doctors found that a diagnosis of mild mental retardation was not supported in plaintiff's case. (See R. at 299 (Dr. Link noting that plaintiff likely "functions in the mid-to-low borderline range in most areas of his life"); 304 (Dr. Rapp concluding mild mental retardation not supported by school records); 321 (Dr. Halloway diagnosing borderline intellectual functioning).)

(E.D.N.C. 1994). However, plaintiff has the burden of proof at steps one through four. Determination of plaintiff's RFC occurs at the fourth step of the sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. As such, plaintiff has the burden of presenting evidence regarding his RFC. If plaintiff satisfies his burden as to the first four steps of the sequential evaluation, the defendant then assumes the burden at step five to demonstrate that work exists in the national economy that the plaintiff can perform. Pass, 65 F.3d at 1203. The ALJ correctly stated and applied the law and the burden shifting during his sequential evaluation in his August 24, 2007, opinion, as the magistrate judge noted. Therefore, plaintiff's objection on this point is overruled.

Finally, plaintiff challenges the magistrate judge's finding that the ALJ's hypothetical question to the VE at plaintiff's March 5, 2007, hearing sufficiently reflected the plaintiff's work-related limitations. Specifically, plaintiff objects to the magistrate judge's finding that the ALJ's use of the phrase "simple, one- to two-step tasks in a low-stress work environment; thus, a non-production work environment" in describing the plaintiff's capabilities to the VE was valid. Plaintiff asserts that this phrase is "too vague and general" to suffice as a valid question for a VE. (Pl.'s Objections to the U.S. Magistrate Judge's Mem. & Recommendation at 4.) Plaintiff argues that hypothetical questions posed to a VE should include specific work traits found important by examiners and consulting doctors, as well as the plaintiff's IQ. (Id.)

As noted by the magistrate judge, the ALJ has "some discretion to craft hypothetical questions to communicate to the vocational expert what the claimant can and cannot do." Fisher v. Barnhart, 181 Fed. Appx. 359, 364 (4th Cir. 2006) (unpublished opinion). Hypothetical questions need not include every specific medical condition. Id. Instead, they should "adequately reflect" the plaintiff's RFC as found by the ALJ and supported by sufficient evidence. Id. (citing Johnson v.

Barnhart, 434 F.650, 659 (4th Cir. 2005)). If it does so, it is "unimpeachable." Id. The key to a valid hypothetical question posed to a VE is that "it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." Id.

Further, contrary to the plaintiff's assertions, the hypothetical need not reflect all of the opinions of examiners and consulting doctors. Instead, it need only adequately reflect those opinions and medical conditions which the ALJ finds credible. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); Erhart v. Sec'y of Health & Human Servs., 969 F.2d 534, 540 (7th Cir. 1992) (holding a hypothetical question valid because it reflected claimant's impairments to the extent the ALJ found them supported by evidence in the record); Sobania v. Sec'y of Health & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989) ("the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ") (quoting Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir.1985)).

In this case, the ALJ determined that plaintiff suffers from borderline intellectual functioning, but that plaintiff can, and does, engage in a variety of routine activities which demonstrate his functional ability. These activities include driving, dropping off and picking up his father from work, following along with television programs, attending church frequently, and maintaining relationships with his girlfriend and family. (R. at 25.) As a result of plaintiff's borderline intellectual functioning and his demonstrated ability to function, the ALJ limited plaintiff's RFC to work that requires "simple, one- to two-step tasks, performed in a low stress, thus non-production, work environment." Id. Using his discretion to craft his hypothetical question to the VE, the ALJ described to the VE an individual who had these very limitations, as well as the other physical

restrictions that the ALJ found to be credible.[6] (R. at 409.) In so doing, the ALJ crafted a hypothetical that adequately reflects the plaintiff's limitations that he found credible. That is all an ALJ must do with regard to posing hypothetical questions to a VE. The magistrate judge correctly concluded that the ALJ's hypothetical question was proper and sufficient. Therefore, the plaintiff's objection on this point is overruled.

## CONCLUSION

After thorough review of the record in this case, this court finds that the ALJ's findings are supported by substantial evidence. For the foregoing reasons, plaintiff's objections to the M&R are OVERRULED. The court hereby ADOPTS such recommendation as its own, and, for the reasons already discussed, defendant's motion is GRANTED, and plaintiff's motion is DENIED. The clerk of court is directed to close the case.

SO ORDERED, this the 14th day of November, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge

---

[6]The full text of the ALJ's question to the VE is as follows:

Please assume that you're dealing with a hypothetical individual the same age as the claimant, with the same educational background and past work experience. Further assume that this hypothetical individual would be restricted in stooping to occasional [sic]; avoid concentrated exposure to fumes. This individual could do simple, one- to two-step tasks in a low-stress work environment; thus, a nonproduction work environment. By nonproduction, I recognize every job requires something to be completed. I'm talking about an assembly line that requires high-speed production of a product or associating a component with a product on an assembly line type of environment. Would such a hypothetical individual be able to do any work which exists in the national economy?

R. at 409-10.

Case 7:07-cv-00184-FL  Document 23  Filed 11/14/08  Page 10 of 10